UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Javeon Giddens,

              Plaintiff,

   vs.                        REPORT AND RECOMMENDATION

Officers Porras, Lynch,
Justin Merten, Michael
Young, One Unknown
Officer, and the City of
Minneapolis,

              Defendants.       Civ. No. 05-1763 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendants' Motion for Summary Judgment.

For these purposes, the Plaintiff appears pro se, and the Defendants appear by Sydnee N. Woods, Assistant Minneapolis City Attorney.

For reasons which follow, we recommend that the Defendants' Motion for Summary Judgment be granted.

## II. Factual and Procedural Background

On August 11, 2005, the Plaintiff commenced this action by filing a Complaint seeking relief under Title 42 U.S.C. §1983.  He is suing the City of Minneapolis, Minnesota, as well as five Minneapolis Police Officers -- ostensibly identified as Officers Porras, Lynch, Justin Merten ("Merten"), Michael Young ("Young"), and "One Unknown Officer."  The Plaintiff claims that the Defendants violated his Federal constitutional rights when they procured, and executed, a Search Warrant in October of 1999.

The evidence before the Court consists of several police reports, which were prepared by several of the Defendants in the course of their official duties.  Those reports are attached to, and authenticated by, an Affidavit by the Defendants' counsel. Docket No. 18.  The Plaintiff has also offered a Search Warrant, and a Supporting Affidavit, in opposition to the Defendants' Motion.  Docket No. 27, Ex. 1.  He has also filed an unsworn Affidavit, which reiterates the claims stated in his Complaint. Compare, Docket No. 28, with Docket No. 1.  The relevant facts, which are contained in those filings, are recounted here.

Sometime prior to October 14, 1999, a Confidential Reliable Informant ("CRI") informed Merten that an individual known as "J" had recently been selling crack cocaine in north Minneapolis, and provided an address, which was listed as the

Plaintiff's residence.  Docket No. 27, Ex. 2.  Based upon a physical description provided by the CRI, as well as that address, Merten determined that the CRI potentially referred to the drug dealer known as "J."  A "booking photo," which was obtained from the Plaintiff's substantial arrest record, allowed the CRI to verify the Plaintiff's identity.  Id.

Thereafter, Merten orchestrated a controlled buy, which involved the CRI and the Plaintiff.  The CRI contacted the Plaintiff and arranged to meet him for the purpose of buying crack cocaine.  Some police officers observed the Plaintiff leave the residence, which had been referenced by the CRI, and they followed him until he met with the CRI.  The surveillance officers then witnessed a transaction in which the Plaintiff provided the CRI a substance that was later determined to be cocaine.  The police continued to watch the Plaintiff as he returned to the referenced residence.  Id.

After the police observed the Plaintiff sell the cocaine to the CRI, Merten obtained a Search Warrant for that residence, and for the car that the Plaintiff had driven to the location of the controlled buy.  See, Docket No. 27, Ex. 1.  Before the Warrant was executed, Merten learned that the Plaintiff's residence might house a pit bull dog.  A police search team was assembled to execute the Warrant, and the officers were warned about the potential presence of the dog.  On the night that the Search

Warrant was executed -- October 20, 1999 -- the car that the Plaintiff had occupied during the controlled buy was at the residence to be searched, and members of the police search team found three (3) dogs in the yard. Id.

Upon entering the residence, one or more members of the search team discovered a man, who was hiding in a closet in an upstairs bedroom. The man had a loaded double barrel shotgun between his legs, which he surrendered to the police without incident. Id. at Ex. 2, pp. 1-2.

One member of the search team, Porras, discovered a black Baretta semi-automatic handgun, and a substance that appeared to be crack cocaine. Lynch found crack cocaine, and a scale in a vehicle, which was parked in the garage at the premises. Members of the search team also discovered a box of shotgun shells and other ammunition, several hundred dollars in U.S. currency, and other evidence of a drug-trafficking operation. Id. at p. 2.

The Plaintiff was in a bathtub at the residence at the time of the police search. He was found in the bathroom, and surrendered immediately. The Plaintiff was charged with several Federal criminal offenses, and he ultimately pled guilty to "bail jumping," and possessing a firearm following a conviction for a felony. See United States v. Giddens, 11 Fed.Appx. 643 (8th Cir., April 6, 2001). As a result of those

- 4 -

convictions, the Plaintiff is presently incarcerated at the Federal Correctional Institution in Oxford, Wisconsin.

In his Complaint, the Plaintiff alleges that Merten violated his Federal constitutional rights by making a request for a Search Warrant without being able to establish probable cause of criminal wrongdoing.  <u>Complaint</u>, at ¶1.  He further alleges that his constitutional rights were violated by the Defendants when they, along with another unknown officer, effected his arrest.  According to the Complaint, those four officers confronted the Plaintiff in the bathroom of his residence, and commanded him, at gunpoint, to get down on the floor.  <u>Complaint</u>, at ¶2.

At that point, the Plaintiff alleges, "an unknown officer" placed plastic wrist locks on the Plaintiff, which assertedly were "applied excessively tight."  <u>Id.</u>  The Plaintiff allegedly informed the officers that the wrist locks were cutting off his blood circulation, but the locks were not immediately removed or adjusted.  He also alleges that he asked to be covered, because he was still naked, and claims that an unknown officer threw a towel, or blanket, over just his head.  He maintains that unknown officers stepped on his body, and kicked him in the side, and that an unknown officer killed his fish by pouring paint thinner into his fish tank.  <u>Id.</u>

The Plaintiff is seeking compensatory and punitive damages, claiming that the individual Defendants violated his constitutional rights under the Fourth, Fifth and Fourteenth Amendments, by the manner in which they obtained and executed the Search Warrant for his residence.  The Plaintiff also claims that the Defendant City of Minneapolis ("the City") violated his Federal constitutional rights by "fail[ing] to provide the proper training and supervision" to the individual Defendants.  Complaint, at p. 3.

As noted, the Defendants have filed a Motion for Summary Judgment, which is supported by an Affidavit and Exhibits that set forth the relevant facts of the case, and the Plaintiff subsequently submitted an untimely opposition to the Defendants' Motion.[1]

### III.  Discussion

A.     Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no

---

[1]Our Order of November 16, 2005, established a deadline for any opposition filings to be submitted by February 16, 2006.  Docket No. 8.  On July 20, 2006, the Plaintiff finally submitted his Memorandum in Opposition, as well as a Supporting Affidavit, and Exhibits.  Docket Nos. 27 and 28.  Those filings are over five (5) months late, and we find them to be untimely but, nonetheless, we have fully considered his arguments in reaching the Recommendation we make.

issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/ South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

B.   Legal Analysis. The Plaintiff seeks relief, under Title 42 U.S.C. §1983, for alleged violations of his Federal constitutional rights. Giving his Complaint the

benefit of a liberal construction because of his pro se status, see, Denton v. Hernandez, 504 U.S. 25, 32 (1992), and Haines v. Kerner, 404 U.S. 519, 520 (1972), the Plaintiff asserts four grounds for relief:  1) that Merten violated the Plaintiff's Fourth Amendment rights by obtaining a Search Warrant that allegedly was not supported by probable cause; 2) that the Plaintiff's Fourth Amendment rights were violated, because excessive force was purportedly employed during the execution of the Search Warrant; 3) that the Plaintiff was deprived of his property without the benefit of Due Process when his fish were allegedly killed; and 4) the City violated the Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments by not adequately training the police officers who executed the Search Warrant.  We find that none of these claims survive the Defendants' Motion for Summary Judgment.[2]

---

[2]Notwithstanding his conviction on evidence which was secured by the Search Warrant in question, the Plaintiff's Fourth Amendment claims, which are predicated upon a purported absence of probable cause for the Warrant's issuance, and upon an alleged excessive use of force in executing the Warrant, are not categoricallybarred by the doctrine in Heck v. Humphrey, 512 U.S. 477, 487 n. 7 (1994), as the Supreme Court, there, expressly noted as follows:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the §1983 plaintiff's still-outstanding conviction.  Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a §1983 action, even if successful, would not

1.    <u>Issuance of the Search Warrant</u>.

The Plaintiff initially claims that Merten violated his constitutional rights when Merten "maliciously precured [sic] a [sic] unannounced forced entry search warrant * * * by submitting an affidavit in support of [the request for the warrant], which failed to establish probable cause and the reasonableness for doing away with the knock and announce requirement." <u>Complaint</u>, pp. 1-2, ¶1. However, the Defendants' evidentiary submissions effectively refute the Plaintiff's conclusory allegations regarding the legality of the Warrant at issue.

Since Merten procured the issuance of the Search Warrant, there certainly could be a claim for a violation of the Plaintiff's Fourth Amendment rights, if the Warrant had been issued "on the basis of an affidavit that shows probable cause only because it contains a deliberate or reckless falsehood or omission." <u>Technical Ordnance, Inc. v. United States</u>, 244 F.3d 641, 647 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).

---

necessarily imply that the plaintiff's conviction was unlawful.

See also, <u>Moore v. Sims</u>, 200 F.3d 1170, 1171 (8th Cir. 2000); <u>Whitmore v. Harrington</u>, 204 F.3d 784, 785 (8th Cir. 2000); <u>Collins v. Bruns</u>, 2006 WL 1961199 at *1 (8th Cir., July 13, 2006); see also, <u>Arndt v. Stillman</u>, 2006 WL 212195 at *4 (D. Minn., January 27, 2006)(rejecting <u>Heck</u> bar as to Fourth Amendment claims for an asserted lack of probable cause, and for alleged excessive force in the execution of a Warrant).

Here, neither the Plaintiff's Complaint, nor anything else in this Record, suggests that the contents of Merten's Search Warrant Application were based upon false information, or any "deliberate or reckless falsehood or omission" involved in the Search Warrant request.

Notably, the Plaintiff never filed a Motion to Suppress the fruits of that Search Warrant in his criminal proceedings, see <u>United States v. Jaevon Darnell Giddens</u>, Crim. No. 99-348 (DWF/AJB),  and, while that is not conclusive as to the existence of probable cause, our review of the Search Warrant Application explains the absence of any such Motion, as it corroborates the assessment of the issuing Judicial Officer that adequate probable cause supported the legitimacy of the Warrant.  See, <u>Plaintiff's first attachment to his Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment, Docket No. 27</u>.  Indeed, Merten's Application provides compelling grounds for the issuance of a Warrant to search the Plaintiff's residence and car, given the incriminating statements that were made by the CRI -- to the effect that the Plaintiff had been selling crack cocaine -- in addition to the personal observations of law enforcement personnel, no more than three (3) days prior to the issuance of the Search Warrant, that the Plaintiff was selling cocaine during a controlled buy.

While the Plaintiff contends that the forced, unannounced entry into his residence was based on stale information -- namely that six (6) days had passed between the issuance, and the execution of the Search Warrant, <u>Docket No. 27</u>, at p. 5, our Court of Appeals has held that a passage of days does not necessarily render the showings, in a Search Warrant Application, stale. See, e.g., <u>United States v. Williams,</u> 10 F.3d 590, 595 (8th Cir. 1993)("Further, the continuing and ongoing nature of cocaine trafficking supports the continued existence of probable cause."); <u>United States v. Shegog,</u> 787 F.2d 420, 423 (8th Cir. 1986) ("We are satisfied that, under the specific facts and circumstances of the present case, the eight-day delay between the issuance and execution of the search warrant was not unreasonable, given the almost exact correspondence between the facts recited in the March 4 affidavit and the facts as they existed on March 12 and the continuing nature of the suspected criminal activity"). We find no staleness in Merten's Application which would legally undermine the probable cause showing for the Warrant that was issued.

There being abundant probable cause for the Warrant's issuance, as a matter of law, the Plaintiff cannot sustain a Fourth Amendment claim against Merten -- or other Defendants on that ground -- and the Defendants are entitled to Judgment as to this aspect of the Plaintiff's Complaint.

2.   <u>The Individual Defendants' Alleged Use of Excessive Force</u>.

The Plaintiff also alleges that "excessive force" was used against him during the execution of the Search Warrant at his residence.  This claim is based on the Plaintiff's allegations that:  1) the plastic wrist locks that were used to restrain him were applied too tightly; 2)  he was not given suitable clothing or some other wrap to cover his naked body;  and 3) the Defendants repeatedly walked on, stepped on, and kicked the Plaintiff in his side.  The Plaintiff's excessive force claim must be dismissed for two controlling reasons.

First, the Plaintiff has not shown -- or even alleged in his pleading -- that any of the named Defendants were personally responsible for any of the acts or omissions on which his excessive force claim is based.  There are no facts alleged in the Complaint, or appearing elsewhere in the Record, which demonstrate that Merten, Lynch, Porras, or Young, personally placed the wrist locks on the Plaintiff, or failed to respond to his verbal complaints about the tightness of the locks.  Nor are there any factual allegations which suggest that Merten, Lynch, Porras, or Young, refused the Plaintiff's request for clothing, or other cover, or that any of them walked on him, stepped on him, or kicked him.  In sum, there is nothing in this Record to establish

that any of the four named Defendants personally did anything, or failed to do something, that allegedly constituted an excessive use of force.

For this reason alone, the Plaintiff's "excessive force" claims against the named Defendants must be dismissed.  See <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir.1985)(to maintain a Section 1983 claim against a defendant, a plaintiff must allege that the defendant "was personally involved in or had direct responsibility for incidents" for which relief is sought); <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990)("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."); see also, <u>Sharrar v. Felsing</u>, 128 F.3d 810, 821 (3rd Cir. 1997)(because excessive force claimant could not identify the individual police officers who allegedly abused him, there was "no evidentiary basis on which to hold * * * defendants liable"); <u>Combs v. Wilkinson</u>, 315 F.3d 548, 557 (6th Cir. 2002)(named defendants were entitled to summary judgment on claims that excessive force was applied only by "unidentified officers").  Simply stated, "[t]here is no genuine issue of material fact," that would stave a grant of Summary Judgment, "if the evidence is such that no reasonable jury could return a verdict for [the Plaintiff]." <u>Robinson v. White County, Arkansas</u>, 452 F.3d 706, 709 (8th Cir. 2006).

Furthermore, even if the Plaintiff had shown that one or more of the named Defendants bore some personal responsibility for the circumstances alleged in support of his excessive force claim, that claim would still fail because the Plaintiff has not shown that he sustained any sufficiently serious injury. To maintain a Section 1983 claim, which is based on the claimed use of excessive force, the claimant must show that he suffered something more than temporary discomfort. Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005)(excessive force claim cannot be sustained where claimant shows no more than de minimis injuries). "An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment." Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005), citing Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995); see also, Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006)("[B]ecause some force was reasonably required to arrest and handcuff [the plaintiff], his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were de minimis injuries that support the conclusion that [the arresting officer] did not use excessive force."), citing Andrews v. Fuoss, supra at 818 ("[The plaintiff] alleges at most very minor injuries, likely nothing more than the temporary and slight aggravation of pre-existing conditions," and "[t]hese are precisely the type of de minimis injuries that preclude a claim for excessive force."); Oliver v. City of

Minneapolis, 2005 WL 2406035 at *6 (D. Minn., September 27, 2005)("[E]ven if the Court were to find fault with the officers' conduct, Plaintiff only sustained, at most minimal injury as a result of the force," and "[a] plaintiff's de minimis injury 'is insufficient to support a finding of a constitutional violation.'"), quoting Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003); Hasher v. City of Rochester, 2005 WL 1925856 at *4 (D. Minn., August 11, 2005) ("[I]n absence of more than minimal injury, Plaintiff's claim that Defendants utilized excessive force during his arrest fails.").

Our Court of Appeals has repeatedly applied the "actual injury" requirement in cases where, as here, law enforcement officials are accused of using excessive force when applying handcuffs.  See, Foster v. Metropolitan Airports Commission, 914 F.2d 1076 (8th Cir. 1990)("nerve damage" that allegedly resulted from being handcuffed too tightly did not support excessive force claim in the absence of "medical records indicating * * * long-term injury as a result of the handcuffs"); Crumley v. City of St. Paul, supra at 1008 (excessive force claim based on malicious application of handcuffs must be dismissed where the claimant suffered no more than minor injuries); see also, Policky v. City of Seward, Nebraska, --- F. Supp.2d ---, 2006 WL 1426506 at *9 (D. Neb., May 25, 2006)(excessive force claim dismissed on

Summary Judgment where plaintiff claimed that "handcuffs were painful," but did not show "any long-term injury as a result of the handcuffs").

Here, there is no allegation in the Complaint, nor any evidence in the Record, showing that the Plaintiff suffered any actual injury during the course of his apprehension that would be sufficient to support a Section 1983 claim. In view of the allegations in the Complaint, it would appear that some unknown person treated the Plaintiff in a less than commendable fashion, but without any showing of who that individual was, or that the treatment resulted in an actual, serious injury. For this additional reason, we find that Merten, Lynch, Porras, and Young, are entitled to Summary Judgment on the Plaintiff's excessive force claim.

3.    <u>Deprivation of Property Without Due Process Claim</u>.

The Plaintiff claims that he was deprived of his property without due process of law. <u>Complaint</u>, at ¶3. This claim presumably is based on the Plaintiff's allegation that an unknown police officer killed his pet fish. This claim is also unsustainable, as a matter of law, for two reasons.

First, as with the excessive force claim, the Plaintiff has not alleged that any of the named Defendants were personally responsible for his claimed denial of due

process.  Therefore, none of the named Defendants can be held liable for depriving the Plaintiff of his property, i.e., his fish, without due process of law.

Furthermore, even if the Record contained some allegation, and some evidence, that one or more of the Defendants was personally responsible for the alleged destruction of the Plaintiff's property, he still could not legally state a viable due process claim.  In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  Id. at 533; see also, Allen v. City of Kinloch, 763 F.2d 335, 336-37 (8th Cir. 1985), cert. denied, 474 U.S. 946 (1985)("[T]he Supreme Court has held that, where a random and unauthorized act by a state employee results in a tortious taking of private property, due process is satisfied if state tort law provides a meaningful post-deprivation remedy").

Here, it appears that the Plaintiff did have an adequate post-deprivation remedy for the alleged loss of his personal property because, under Minnesota Statutes Section 466.02, municipalities are "subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment."  As a result, the

Plaintiff could have sued the City of Minneapolis, under Section 466.02, for the loss of his fish.[3]   The remedy provided by State statute constitutes an adequate post-deprivation remedy for the allegedly wrongful destruction of the Plaintiff's property, and therefore, he cannot maintain a Federal civil rights action based on an alleged denial of Due Process.  See, Hubenthal v. County of Winona, 751 F.2d 243, 246 (8th Cir. 1984)(plaintiff's due process claim dismissed because Minnesota Statutes Section 466.02 provided him with an adequate post-deprivation remedy for alleged loss of property); see also, Kontos v. Wheeler, 1994  WL 319290 at * 1 (8th Cir. 1994) ("[T]he gravamen of plaintiff's complaint is that he was deprived of property without due process of law," and "[i]t is fatal to this claim that Minnesota provides an adequate state post-deprivation remedy for loss of property.").  "[I]n challenging a property deprivation [under the Fourth Amendment or the Due Process Clause], the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate" and, having done neither, the Plaintiff's "'substantive and procedural due process claims are barred.'"  Ali v. Ramsdell, 423

---

[3]To pursue this State remedy, a claimant must provide a formal notice of claim to the municipality, which satisfies the requirements of Minnesota Statutes Section 466.05, Subdivision 1.  Plaintiff cannot pursue this State remedy here, because he has not shown -- or even alleged -- that he has met that statutory notice of claim requirement.

F.3d 810, 814 (8th Cir. 2005), quoting Hudson v. Palmer, supra at 539 (O'Connor, J.,

concurring); accord, Weimer v. Amen, 870 F.2d 1400, 1406 (8th Cir. 1989).

              4.    Claims against the City of Minneapolis.

           Finally, we conclude that the City of Minneapolis must be granted

Summary Judgment on the claims that the Plaintiff has asserted against the City itself.

The Plaintiff has not presented an actionable Section 1983 claim against the City,

because he has not shown that the City, itself, was responsible for any violation of his

Federal constitutional rights.

     It clearly appears that the Plaintiff is suing the City based solely upon the

alleged acts or omissions of the City's employees -- namely, the individual police

officers who executed the Search Warrant at the Plaintiff's residence.  However, the

doctrine of respondeat superior does not apply to Section 1983 claims, which means

that a defendant cannot be held vicariously liable for the alleged constitutional

misdeeds of an employee or subordinate.  See, Monell v. Department of Social

Services, 436 U.S. 658, 694 (1978); Miller v. Compton, 122 F.3d 1094, 1100 (8th Cir.

1997).  Stated otherwise, "[a] municipality cannot be held liable solely because it

employs a tort feasor -- or in other words, a municipality cannot be held liable under

§1983 on a respondeat superior theory." Kuha v. City of Minnetonka, 365 F.3d 590,

603 (8th Cir. 2004), quoting Monell v. Department of Social Services, supra at 691.

A municipality, such as the City of Minneapolis, can be liable under Section

1983, if a plaintiff can prove that the municipality has adopted some policy, custom

or practice that caused a violation of the plaintiff's Federal constitutional rights.  See,

Lund v. Hennepin County , 427 F.3d 1123, 1125 (8th Cir. 2005); City of Canton v.

Harris, 489 U.S. 378, 386-87 (1989); see also, Angarita v. St. Louis County, 981 F.2d

1537, 1546 (8th Cir. 1992) ("A municipality may be held liable under Section 1983

only if a municipal custom or policy caused the deprivation of [a] right protected by

the constitution or federal laws"); Williams v. Little Rock Municipal Water Works,

21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the

acts of their employees in contravention of the civil rights of individuals only upon

a showing that a 'policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers' is the motivating force behind the

acts of those employees"), quoting Monell v. Department of Social Services, supra at

690.

Here, we have found that none of the Plaintiff's claims against the individual

Defendants viably state a constitutional violation, so there is no basis for the Plaintiff

to properly claim that he was injured by a custom, policy or practice of the City, as he has failed to demonstrate a constitutional injury. "Municipalities cannot be held liable under §1983, however, 'unless action pursuant to official municipal policy of some nature caused a constitutional tort." Kuha v. City of Minnetonka, supra at 603, quoting Monell v. Department of Social Services, supra at 691. Here, no constitutional tort has been proven, and therefore, no Monell claim will lie.

Moreover, the Plaintiff has not alleged that his constitutional rights were violated because of some particular policy, custom or practice adopted by the City. Rather, he has simply alleged that "[t]he City of Minneapolis failed to provide proper training and supervision to defendants Justin Merten, Michael Young, Officer Lynch, Porras and one unknown officer * * * which lead [sic] to each officer violating the plaintiff's 4th, 5th, and 14th amendments." Complaint, at ¶3. Failure to properly train and supervise municipal employees can give rise to liability under Section 1983, but "'[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983.'" Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1094

(8th Cir. 2004), quoting <u>City of Canton v. Harris</u>, supra at 389 (citations omitted).  As

explained by our Court of Appeals:

> A city * * * may be liable for deficient policies regarding hiring and training police officers where (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by a municipality,' * * * and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. * * * It is necessary to show 'that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.' * * * In other words, the plaintiff must demonstrate that the city 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.

<u>Andrews v. Fowler</u>, 98 F.3d 1069, 1076 (8th Cir. 1996) (citations omitted).

The Plaintiff cannot sustain his Section 1983 claim against the City with just his vague

and conclusory allegation that the City "failed to provide the proper training and

supervision to defendants."   To withstand the Defendants' Motion for Summary

Judgment, he must show some **specific** deficiency in the City's training policy, which

evidences a deliberate disregard for the constitutional rights of its citizens and visitors.

See, <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2nd Cir. 1993) ("mere assertion

* * *  that a municipality has such a custom or policy [that purportedly caused a

violation of the plaintiff's constitutional rights] is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). A failure to train the City's police officers cannot be inferred from just the single incident described in the Plaintiff's Complaint. <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985)(an actionable policy or custom cannot be inferred from a single instance of unconstitutional activity). Therefore, the Plaintiff's Section 1983 claim against the City cannot survive the City's Motion for Summary Judgment. See <u>Williams v. Little Rock Municipal Water Works</u>, supra at 223-24 (municipality was entitled to summary judgment dismissal of plaintiff's Section 1983 claims where plaintiff presented no circumstantial or direct evidence of any custom or policy that violated plaintiff's constitutional rights, and therefore, "no reasonable factfinder could conclude that there was any [such] policy or custom").

In sum, finding no viable constitutional violation of the Plaintiff's rights we recommend that the Defendants' Motion for Summary Judgment be granted in its entirety.

NOW, THEREFORE, It is –

RECOMMENDED:

That the Defendants' Motion for Summary Judgment [Docket No. 16], be granted, and that this action be dismissed, with prejudice.


Dated:  July 27, 2006                           *s/Raymond L. Erickson*
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


# N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2, any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 11, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 11, 2006**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.